# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO. 1:23-cv-21620-CMA

ALLISON LAM VILLAGRA, on behalf of herself
and all others similarly situated,

    Plaintiff(s),

    v.

BVN 16, LLC d/b/a BLACK MARKET
BAYSIDE, and ERICK PASSO, individually,

    Defendants.
_____/

## JOINT MOTION FOR FINAL APPROVAL OF CONDITIONAL SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, ALLISON LAM VILLAGRA ("Plaintiff"), on behalf of herself and all others similarly situated, Opt-In Plaintiff, DESTINY VILLANUEVA ("Villanueva"), and Opt-In Plaintiff, CURTIS SANTOS ("Santos"), (collectively referred to herein as "Plaintiffs"), and Defendants, BVN 16, LLC d/b/a BLACK MARKET BAYSIDE and ERICK PASSO (collectively referred to herein as "Defendants") (Plaintiffs and Defendants collectively referred to herein as the "Parties"), hereby file this Joint Motion for Final Approval of Conditional Settlement and Incorporated Memorandum of Law, as follows:

### I.    INTRODUCTION

The Parties received no objection to the preliminarily approved settlement [D.E. 46] and no objection was filed with the Court. On October 4, 2023, the Court preliminarily approved the Parties' collective FLSA settlement agreement (the "Settlement Agreement"). *Id*. The Settlement Agreement directed Plaintiffs' Counsel ("Counsel for the Collective") to send notification of the settlement to the members of the FLSA collective [D.E. 45-1]. The approved notification provided

1

the FLSA collective members (the "Settlement Collective Members") the ability to participate in or object to the settlement by November 27, 2023 [D.E. 46 at 3-4]. The preliminary approval order and subsequent settlement notification required any objector to file their objection with the Court and provide corresponding copies to the Parties' counsel. *Id*. at 4. The Court also scheduled an in-person final approval hearing on December 18, 2023 at 8:30am. *Id*. at 6. As no objections were filed with the Court, the Preliminary Approval Order states that any Settlement Collective Member shall not be permitted to object at the December 18, 2023 final approval hearing.

The notice period has now expired, and the settlement satisfies all the criteria for final approval. Of two hundred and seventy five (275) potential Settlement Collective Members, twenty-nine (29) submitted a valid claim form to participate in the settlement.[1] With this joint motion, the Parties respectfully requests that the Court: (1) grant final approval of the Settlement Agreement; (2) approve the distribution of settlement payments to the Settlement Collective Members; (4) approve the distribution of court-approved attorney's fees and costs for class counsel; (5) approve the distribution of settlement administration costs to class counsel; (6) approve settlement payments to Plaintiffs as consideration for the executed general release in the Settlement Agreement; and (7) approve the proposed schedule for final settlement approval, as outlined herein.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

Defendants own and operate the restaurant Black Market Bayside (the "Restaurant") where Defendants employed Plaintiffs as Front-of-the-House Employees ("FOH Employees"). Plaintiff worked as a Bartender during various workweeks between July 19, 2021, and March 27, 2022. *See* D.E. 1. Opt-In Plaintiff Villanueva also worked for Defendants as a Bartender from September 1,

---

[1] A Notice of Filing containing the submitted valid claims form is filed contemporaneously with this Motion.

2

2021, through December 15, 2021. *See* D.E. 29; D.E. 29-1; D.E. 33-2. Opt-In Plaintiff Santos worked for Defendants as a Busser from August 8, 2021, through May 1, 2022. *See* D.E. 30; D.E. 30-1; D.E. 33-3. Plaintiffs contend that they each surrendered tips to the Restaurant's unlawful tip pool. *See* D.E. 1; D.E. 29-1; D.E. 30-1; D.E. 32-1.

On May 1, 2023, Plaintiff brought this lawsuit against Defendants on behalf of herself and all similarly situated Front-of-the-House employees. *See* D.E. 1. Plaintiff's lawsuit is based on Defendants' operation of an unlawful tip pool that included both FOH Employees and the Restaurant's managers and supervisors, in violation of 29 U.S.C. § 203(m) and 29 U.S.C. § 207 ("FLSA"). *See* D.E. 28. On July 17, 2023, Plaintiffs filed a Motion for Conditional Certification requesting the certification of a Tip Surrender Collective. *See* D.E. 33. On September 5, 2023, the Court conditionally certified the Tip Surrender Collective: all FOH employees who worked for Defendants during the previous three (3) years who were required to surrender any of their tips to Defendants and did not sign a class or collective waiver. *See* D.E. 37.

On September 18, 2023, the Parties attended a formal mediation with Mediator Dana M. Gallup, Esq. Ultimately, the Parties resolved the case on a collective basis at the mediation and reached a settlement that the Court preliminarily approved. *See* D.E. 46. The Court entered its Preliminary Approval Order, finding that the terms of the Settlement Agreement were fair, reasonable, and adequate. *Id*. The Preliminary Approval Order also named Plaintiffs' Counsel and Counsel for the Collective. *Id*.

### III. **SUMMARY OF THE SETTLEMENT TERMS AND NOTIFICATION PROCEDURE**

**a. The Settlement Fund**

Pursuant to the Settlement Agreement, Defendants agreed to create a settlement fund (the "Settlement Fund") of up to $147,500,00. *See* Settlement Agreement attached hereto as **Exhibit**

**"A."** The Settlement Fund covers payments to the Settlement Collective Members, Court-approved attorney's fees and costs, Court approved consideration payments to Plaintiffs for resolution for entering a mutual general release with Defendants, and the costs of administering the settlement. *Id.*

### b. No Waiver of Claims for Those Who Did Not Opt-In

Any individual FOH employee who was a member of the collective but who did not opt-in is not releasing any claims. These FOH Employees have retained their legal rights to bring a separate action against Defendants for *any* failure to abide by the FLSA, including those alleged in this federal wage lawsuit. Plaintiffs are receiving additional consideration in exchange for the general release they have entered with Defendants.

### c. Notification to Eligible Collective Members

The Settlement Agreement required Defendants to provide the names, addresses, email addresses, and phone numbers for the Settlement Collective Members. **Ex. A**. Pursuant to the Settlement Agreement, Counsel for the Collective was appointed as the Settlement Administrator and would provide the notification to the Settlement Collective Members to reduce expenses. On October 9, 2023, Defendants provided the last known contact information for the Settlement Collective Members.

The Settlement Collective Members consist of two hundred and seventy-five (275) FOH Employees who were required to surrender their tips and did not execute a class or collective waiver. Defendants employed the Settlement Collective Members at any time between May 1, 2020, and May 1, 2023. Including Plaintiffs, a total of twenty-nine (29) current and former FOH employees have filed their Consent to Sue forms and joined this Collective Action.

#### i. U.S. Mail Notifications

Out of the two hundred and seventy-five (275) eligible Settlement Collective Members, Defendants provided a total of two hundred and seventy-five (275) mailing addresses for notification. Counsel for the Collective sent mail notice to all two hundred and seventy-five (275) of these Settlement Collective Members. Eighty-six (86) of these mailed notices came back to Plaintiffs as "undeliverable" and/or "return to sender." As a result, Counsel for the Collective notified one hundred and eighty-nine (189) eligible Settlement Collective Members via U.S. mail of their right to join this lawsuit. Counsel for the Collective, however, was able to provide notification through either email or text (or both) to fifty (50) of the individuals that did not receive notification via U.S. mail.

| Total Collective Size | Notices Returned to Sender | Forwarded Notices | Eligible Collective Members Successfully Notified via Mail |
|---|---|---|---|
| 275 | 86 | 1 | 189 |

ii. Email Notifications

Out of the two hundred and seventy-five (275) eligible Settlement Collective Members, Defendants provided a total of one hundred and eighty-one (181) e-mail addresses for notification. Plaintiffs' Counsel sent e-mail notice to all one hundred and eighty-one (181) of these Settlement Collective Members. Thirty-two (32) of these e-mail notices came back to Plaintiffs as "undeliverable." As a result, Plaintiffs' Counsel notified one hundred and forty-nine (149) eligible Settlement Collective Members via e-mail of their right to join this lawsuit.

| Total Collective Size | "Undeliverable" E-Mail Notices | Eligible Collective Members Successfully Notified via E-Mail |
|---|---|---|
| 275 | 32 | 149 |

### iii. Text Message Notifications

Out of the two hundred and seventy-fine (275) eligible Settlement Collective Members, Defendants provided a total of one hundred and sixty-three (163) phone numbers for notification. Counsel for the Collective sent text message notice to all one hundred and sixty-three (163) of these Settlement Collective Members. Nineteen (19) of these text message notices came back to Plaintiffs as "failed to deliver." As a result, Counsel for the Collective notified one hundred and forty-four (144) eligible Settlement Collective Members via text message of their right to join this lawsuit.

| Total Collective Size | "Failed to Deliver" Notices | Eligible Collective Members Successfully Notified via Text Message |
|---|---|---|
| 275 | 19 | 144 |

### d. Allocation Formula and Settlement Payments to Settlement Collective Members

On December 7, 2023, Counsel for the Collective submitted to Counsel for the Defendants a report listing all initially approved and initially rejected claims. Settlement Collective Members who timely submitted claim forms will be paid pursuant to an allocation formula based on the number of paychecks they received during the relevant time period. [D.E. 45-1]. An IRS Form W2 shall be issued by the appropriate Defendants to Plaintiffs and to each Settlement Collective Member to whom compensation is found to be owed pursuant to the settlement terms, as applicable under IRS regulations. *Id.* Pursuant to the allocation formula, eligible Settlement Collective Members who timely submitted Claim Forms will receive $40.32 for each paycheck received during the relevant time period. *Id.*

After deducting the attorneys' fees and consideration payments from the Settlement Fund, the remaining amount for the settlement payments to the collective is $72,500.00. The allocation formula consists of the following:

| | |
|---|---:|
| 2021 Paychecks Issued: | 581 |
| 2022 Paychecks Issued: | 1,107 |
| 1/1/23 through 5/1/23 Paychecks Issued: | 381 |
| PRELIMINARY TOTAL: | 2,069 |
| Paychecks for Employees that signed waivers: | -271 |
| TOTAL PAYCHECKS ISSUED FOR CALCULATION | 1,798 |

AMOUNT PER PAYCHECK FOR QUALIFIED OPT-IN ($72,500.00/1,798)   $40.32

A total of twenty-nine (29) valid claims will be paid. The highest individual settlement share payable to a collective member is currently estimated to be approximately $1,249.92 and the average individual settlement share is currently estimated to be approximately $297.53.

| Number of Settlement Collective Members | Total Checks Received from Defendant During the Relevant Time Period | Total Approximate Settlement Share |
|---|---|---|
| 29 | 214 | $8,628.48 |

The Defendants shall send each Settlement Collective Member with an approved claim two separate settlement payments by check. The first payment shall be reported as wage income on a W-2 minus all applicable deductions and withholdings (50% of the total payment). The second settlement payment shall be non-wage income reported on a Form 1099 (50% of the total payment). The settlement payment to approved eligible Settlement Collective Members are to be made in accordance with the deadline in the Settlement Agreement.

    e. **Settlement Administration Expenses**

Counsel for the Collective conducted the notification to the Settlement Collective Members to minimize costs. The Settlement Agreement states that the Settlement Administration Expenses

will be paid from the Settlement Fund. **Ex. A**. The Settlement Administration Expenses in this matter for the notifications to the Settlement Collective Members total $1,101.26.

## f. Attorney's Fees and Litigation Costs

Counsel for the Collective will move for approximately forty percent (40%) of the Settlement Fund as attorney's fees ($59,000.00) and reimbursable costs ($1,000.00) for a total of $60,000.00. *See* 29 U.S.C. § 216(b). This is within the range of a typical fee award in a common fund case. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278 at *1 (M.D. Fla. 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases"); *Wolff v. Cash 4 Titles*, 2012 WL 5290155.

The Parties separately negotiated fair and reasonable attorney's fees based on the amount of time expended and the complexity of the litigation. Furthermore, the amount of fees and costs payable under the terms of the Agreement do not impact the claims and were negotiated without regard to the amounts paid to the Settlement Collective Members. The Parties agree that the attorney's fees and costs are fair and reasonable compensation for the time and effort incurred by Counsel for the Collective and were necessary for the prosecution of this action. Counsel for the Collective billed a reasonable hourly rate that is consistent with hourly rates previously awarded to them as reasonable in the litigation of similar claims before this Court. Defendant does not oppose Counsel for the Collective's recovery of the fees or expenses provided for under the terms of the Agreement and does not object to the reasonableness of Plaintiffs' fees and costs or that they were reasonably and necessarily incurred for Plaintiffs to obtain the results received in this action.

Counsel for the Collective will file a formal motion for approval of fees and costs contemporaneously with this Motion.

    g. **Consideration for Plaintiff's Mutual General Release**

In addition to their awards under the allocation formula as a Settlement Collective Member, Plaintiffs will also each receive payment in the amount of $5,000.00 as consideration for the mutual general release [D.E. 45-1]. Such general release payments to Plaintiffs are to be made by Defendants within the deadline established by the Settlement Agreement. Separate consideration in exchange for executing a general release is permissible and the Court should permit the consideration payment for the collective settlement. *See, e.g.*, *Teahl v. Lazy Flamingo, Inc.*, 2016 WL 4942067 (M.D. Fla. 2016) (approving additional payment to class representative in FMWA class action settlement from the common fund in exchange for class representative's execution of a general release). *See also*, e.g., *Baja, et. al. v. Costco Wholesale Corp.*, S.D. Fla. Case No. 0:21-cv-61210-AHS at D.E. 56, n.1 (Dec. 20, 2022) (approving a general release payment in class action settlement).

    h. **Right to Object or Comment**

Any Settlement Collective Member who disagreed with the Settlement had the right to object to the settlement in writing. All written objections must have been filed with the Court and e-mailed to Counsel for the Collective and Defendants' Counsel no later than November 27, 2023. Any person in the Settlement Collective who failed to timely file an objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this section and as detailed in the Notice, and at the same time provided copies to designated counsel for the Parties: (1) is not be permitted to object to this Settlement Agreement at the Final Approval Hearing; (2) is foreclosed from seeking any review of this Settlement Agreement or the

Final Approval Order by appeal or other means; (3) is deemed to have waived his or her objections; and (4) be forever barred from making any such objections in this action or any other action or proceeding.

No objections were filed with the Court as of November 27, 2023. As of the date of the filing of this Motion, the Parties are unaware of any objection to the Settlement.

IV. **MEMORANDUM OF LAW**

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving debts and uncertainties and preventing lawsuits." *See, e.g., In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *See Ferron*, 2021 WL 2940240 at *4 *citing Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see, also, Colourpop Cosmetics*, 2020 WL 5848620 at *3 ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements"). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002).

The Parties will use the Fed. R. Civ. P. 23(e) framework for the Court's consideration of this collective settlement other. No separate framework for a collective action pursuant to 29 U.S.C. § 216(b) exists other than the *Lynn's Food Store* analysis. In evaluating a proposed class action settlement, "the district court may rely upon the judgment of experienced counsel for the parties." *See, e.g., Ferron*, 2021 WL 2940240 at *5 *citing Colourpop Cosmetics*, 2020 WL

5848620 at *3. "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id.* Under Fed. R. Civ. P. 23(e), before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. *See, e.g., Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240 (S.D. Fla. 2021) (Ruiz, J.) (granting final approval of Rule 23 class settlement) citing Fed. R. Civ. P. 23(e).

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *See Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354.

Here, the issues in this case were disputed and the Settlement Agreement was negotiated at arm's length by experienced counsel, who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions. There was no fraud or collusion, and the Settlement Agreement was reached after the Parties were equipped with the size of the putative collective and other pertinent discovery, in addition to detailed investigations conducted by both sides, including but not limited to, review of payroll and other relevant documentation from the Restaurant. During the litigation Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute in contested litigation, and was resolved through arm's-length settlement negotiations, it should be approved.

    a. **The Court May Properly Exercise Jurisdiction Over this Matter**

11

The Parties stipulate that the Court has personal jurisdiction over Plaintiffs and the Settlement Collective Members because they received the requisite best notice and due process. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) *citing Mullane v. Cent*; *Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *Colourpop Cosmetics*, 20220 WL 5848620 at *4; *see, also,* **Exhibit A**.

**b. Best Notice Practicable Was Provided to the Settlement Collective**

Pursuant to the Court's Preliminary Approval Order, "the plan for giving Notice, in form, method, and content, provides due and sufficient notice to all persons in the Settlement Collective." *See* D.E. 46. All aspects of the notice plan were completed on November 27, 2023. All eligible Settlement Collective Members' approved claim forms were sent back to Counsel for the Collective by November 27, 2023.

**c. Notice was Reasonably Calculated to Inform Settlement Collective Members of their Rights**

The contents of the Notice clearly stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the collective certified; (iii) the collective claims, issues, or defenses; (iv) that a collective member may enter an appearance through counsel if the member so desires; (v) the deadline for submitting a claim form to participate in the Settlement Fund; (vi) the time and manner for objecting to the settlement ; and (vii) a member's rights should they choose not to participate in the Settlement Fund.

The Notice also explained the allocation formula, the basis on which each Settlement Collective Member's award was determined, and the allocation of attorney's fees and costs, and provided specific information regarding the date, time, and place of the final approval hearing and how to object to the settlement. This information was adequate to put Settlement Collective Members on notice of the proposed settlement.

**d. Settlement Obtained on Behalf of the Collective is Reasonable**

When reviewing a class settlement, "the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members receive as much from a settlement as they might have recovered from victory at trial." *See, e.g., Colourpop Cosmetics*, 2020 WL 5848620 at *5. The Eleventh Circuit has also instructed district courts to consider several factors – often referred to as the *Bennett* factors. The *Bennett* factors include:

> (1) the likelihood of success at trial;
> (2) the range of possible recovery;
> (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
> (4) the complexity, expense, and duration of litigation;
> (5) the substance and amount of opposition to the settlement; and
> (6) the stage of proceedings at which the settlement was achieved.

*See Bennett*, 737 f.2d at 986.

**(i)    There is No Evidence of Fraud or Collusion**

Defendants at all times aggressively disputed the claims in this case. The Parties attended an early settlement conference with Magistrate Judge Damien and were unable to resolve the claims at that early stage of the proceedings given the Parties' respective positions. *Id.* After months of discovery and negotiations, the Parties only reached agreement at mediation and only after the Court's September 5, 2023 Order granting conditional certification. Accordingly, there was no fraud or collusion in reaching the terms of this settlement.

**(ii)    Likelihood of Success in Litigation**

Continuing this action presents several litigation hurdles, including, but not limited to, potential decertification, summary judgment briefing, trial, and potential appellate review following a final judgment. The Settlement Agreement secured significant monetary relief for the Settlement Collective Members. Importantly, each Settlement Collective Member could have

received $40.32 for every paycheck they received when working during the relevant time period. This settlement avoids risk that Settlement Collective Member would have possibly not obtained anything if case was decided on summary judgment or at trial in favor of Defendants. *See, e.g., Haynes v. Shoney's*, 1993 WL 19915 at *6 (N.D. Fla. 1993) ("The risks for all parties should this case go to trial would be substantial… It is possible that trial on the merits would result in… no relief for the class members… Based on… the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement… is a fair and reasonable compromise").

> **(iii) Fairness, Adequacy, and Reasonableness of Settlement**

In determining whether the settlement is fair in comparison to the potential range of recovery, the Court is guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988); *see, also, Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *20 (S.D. Fla. 2021) (Goodman, M.J.). Courts regularly find settlements to be fair even where "plaintiffs have not received the optimal relief." *See, e.g., Warren v. City of Tampa*, 693 F.Supp. 1051, 1059 (M.D. Fla. 1988). Here, the allocation formula allows each Settlement Collective Member to receive payment for every paycheck received as compensation for the alleged improper tip sharing. *See Poertner v. Gillette Co*., 618 F. App'x 624 (11th Cir. 2015); *Beber, et. al. v. Branch Banking & Trust Co*., et. al., S.D. Fla. Case No. 15-cv-23294, ECF No. 109 (S.D. Fla. 2017) (approving class settlement with payment percentages of damages of 10%, 8%, and 5%); *In Re Checking Account Overdraft Litig*., 830 F.Supp.2d 1330, 1346 (S.D. Fla. 2011) (range 9% to 45% of damages was an "exemplary" result). The relief obtained for the Settlement Collective Members is reasonable under the circumstances. *See, e.g.,*

*Segroughni v. Advantus Restaurant, Inc*., M.D. Fla. Case No. 8:12-cv-02000-SDM-TBM (granting final approval to class comprised of 87 restaurant servers where common fund yielded an average award of $2,294.12 for each class member).

      **(iv)    Complexity, Expense and Duration of Litigation**

The length of time it would take to obtain relief on behalf of a class is a key factor to consider in evaluating the reasonableness of a class settlement. *See Ferron*, 2021 WL 2940240. The immediate benefit provided by a class settlement–compared to the time require to litigate class actions involving complex claims and defenses–weighs in favor of deeming a settlement fair, reasonable, and adequate. *Id. citing Colourpop Cosmetics*, 2020 WL 5848620 at *5. Both sides in this case have been vigorously represented by experienced and competent counsel. The cost of conducting additional discovery would be substantial and would delay any recovery sought by the collective. In light of the uncertainty as to the merits and timing of payment (if any) the Settlement Agreement represents a fair compromise of claims. *See, e.g., Bennett v. Behring Corp*., 96 F.R.D. 343, 349-50 (S.D. Fla. 1982).

      **(v)    Lack of Opposition to the Settlement, Opinions of Class Counsel, Plaintiff and Absent Settlement Class Members**

Not a single Settlement Collective Member objected to the terms of the Settlement Agreement. This supports the reasonableness of the settlement. *See, e.g., Ferron*, 2021 WL 2940240 ("The lack of opposition weighs strongly in favor of the Court's approval of the Agreement… A low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable") *citing Braynen v. Nationstar Mortg., LLC, et. al*., 2015 WL 6872519 at *6 (S.D. Fla. 2015); *see, also, Burrows v. Purchasing Power, LLC*, 2013 WL 10167232 at *7 (S.D. Fla. 2013) ("No

15

members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition").

Moreover, the Parties believe this is a fair and adequate settlement for the collective in light of the circumstances surrounding the litigation. *See, also, Ferron*, 2021 WL 2940240 ("the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation'"). During the Notice Period, there was a greater than 10.5% participation rate based on the Consent to Sue forms received by Counsel for the Collective. *See Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1310 (S.D. Fla. 2005) (Altonaga, J.) (Granting final approval of class settlement where there was a 9.4% participation rate and 41 objections). Finally, Plaintiffs are particularly pleased with the recovery.

**(vi)    Stage at Which Settlement Was Achieved**

Counsel for Collective conducted pre-suit investigations, which included pre-suit discussions with defense counsel, participated in a Court supervised settlement conference, Court ordered mediation, and obtained necessary discovery throughout the litigation of this case in order to make a reasoned judgment concerning the conditional settlement achieved at mediation. Accordingly, counsel for the Plaintiffs had an "appropriate appreciation of the merits of the case before negotiating." *See, e.g., Ferron*, 2021 WL 2940240 (citing *Colourpop Cosmetics*, 2020 WL 5848620 at *5). Further, "early settlements are to be encouraged and only some reasonable amount of discovery should be required to make these determinations." *Id. citing Ressler v. Jacobson*, 822 F.Supp. 1551, 1554 (M.D. Fla. 1992).

**V.    CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Parties respectfully submit that the terms set forth within the Settlement Agreement constitute a fair and reasonable resolution of their

dispute concerning FLSA wages, and request that this Honorable Court approve the Settlement agreement, enter an order dismissing all claims with prejudice, and retain enforcement of the Settlement Agreement.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to S.D. Fla. L.R. 7.1(a)(3), prior to the filing of the instant motion, the Parties conferred and agree as to the relief sought herein.

**Date: December 11, 2023**

Respectfully Submitted,

| | |
|---|---|
| **JORDAN RICHARDS PLLC –** <br> **USA EMPLOYMENT LAWYERS** <br> 1800 SE 10th Ave. 205 <br> Fort Lauderdale, Florida 33316 <br> (954) 871-0050 <br> *Counsel for Plaintiff and* <br> *Proposed Collective* <br><br> By: */s/ Michael V. Miller* <br> Michael V. Miller, Esq. <br> Florida Bar No. 64005 <br> michael@usaemploymentlawyers.com | **AARON BEHAR, ESQ.** <br> Florida Bar No. 166286 <br> ab@beharbehar.com <br> BeharBehar <br> 490 Sawgrass Corporate Parkway, Ste. 300 <br> Sunrise, FL 33325 <br> (954) 990-8639 <br> *Counsel for Defendants* <br><br> By: */s/ Aaron Behar* <br> Aaron Behar, Esq. <br> Florida Bar No. 166286 <br> ab@beharbehar.com |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on this 11th day of December 2023.

By: */s/ Michael V. Miller*
MICHAEL V. MILLER, ESQUIRE
Florida Bar No. 64005

## SERVICE LIST

**AARON BEHAR, ESQ.**
Florida Bar No. 166286
ab@beharbehar.com
BeharBehar
490 Sawgrass Corporate Parkway, Ste. 300

Sunrise, FL 33325
 (954) 990-8639
*Counsel for Defendants*